And we'll move to our third case this morning, the United States against Bhogireddy. Good morning. May it please the court, counsel, my name is Josh Herman, and I am here presenting argument on behalf of Appellant Venkatesh Bhogireddy. We raised three issues in our appellate brief, and I'd like to focus on two, sufficiency and the 404B issue. There's some interlocking, but I'm going to try to keep the arguments a bit separate, starting with the sufficiency argument. This case we submit is one of the rare cases that tests what this court announced in Garcia, which is what are the outer limits of the reasonable inferences that can be drawn given the relevant standard of proof? When even giving all reasonable inferences to the government here, the evidence was insufficient as to every count of the murder for hire convictions. Each of those convictions required Bhogireddy to use a facility of interstate commerce or to cause another to travel with respect to count four in an interstate manner with the intent that a murder be committed. And when you look at all of the evidence, and especially we submit when you listen to the recordings, there is such a degree of inherent contradictions and uncertainty at every stage. So for instance, when the agent, the undercover agent – Can I ask you a question? Yes. Isn't that uniquely the jury's responsibility to determine those conflicts? Because intent is sort of the fundamental jury issue in a case like this. And why is it not up to the jury to determine whether or not your client had the requisite intent to commit the crime? Sure. So let me give you some examples on that because we – first of all, as a framing issue, the intent – the credibility arguments and the weighing of the credibility arguments being the province of the jury is not the type of argument that we're making here. It's when you look at the evidence even on its face, when you look at Bhogireddy's statements on their face, they create a contradiction, an inherent contradiction that… That's the problem I've got. So let me give you an example. There was no contradiction. The argument would be there's no evidence that he acted with criminal intent, and then you'd have a sufficiency of the evidence problem. But when there's a conflict, why is that not an issue for the jury? So let me – it's a conflict between what Bhogireddy said and what the agent interpreted him to say. That's what the conflict is. So for instance, when the agent at the June 6, 2019 meeting asked Bhogireddy – and this is after the word gone is used, which the government and the district court's Rule 29 order places an unbelievable amount of weight on the word gone. After Bhogireddy – after the agent says, do you want him gone, and then there's some garbled communication, that the agent then says, do you want him hurt or killed? And Bhogireddy's answer is I don't know. Wait a minute. Bhogireddy says – here, let me just read it. Bhogireddy says he can't. I'm talking like a coma like that. The agent says, yeah, I mean the only problem with that is that's hard to do, right? And Bhogireddy says, yeah, yeah, so the other way. So, Judge, but back before he even says that exchange happens, first of all, the word coma comes – means that Bhogireddy is coming into the situation not with an intent to kill but with an intent to do something short of killing. But even before that, the agent asked him, do you want him hurt or killed? And Bhogireddy says, I don't know. And even until the very end, the last meeting, Your Honor, October 2, 2019, Bhogireddy is saying, I want to give him some chance. This is wrapped around comments throughout the meetings when the agent is pushing the idea of using a gun. First meeting, do you want me to get a gun? Bhogireddy, no. Last meeting, the first thing that Bhogireddy says when he walks into the meeting, no gun, no shooting, some type of accident, a crash is OK. Train looks good. Train thing looks. So on that, Your Honor, that is beyond an impossibility. Well, wait. He says – Bhogireddy – the agent says dead? Bhogireddy says, yeah, even doesn't dead or in a crash good enough. And the agent says, well, it's going to be probably dead. And Bhogireddy says that will be OK. But then he proposes – he agrees with the agent's idea of pushing this man… In front of a train. In front of a train in New York when the man works at home from New Jersey. And when in that same conversation, when the agent brings up the train, Bhogireddy's own words were not that he goes there. This is also the same meeting when there is an agreement. That's just a dispute about the method, not the goal. In the context of everything, when he's supposed to bring also to this meeting half down for it to even proceed and he comes up short. It is, all said and done, one of the factors that moves this type of evidence into what we see in some cases of the equipose. Where there's a balancing of the evidence that does not tip it to beyond a reasonable doubt. So, for instance, back to the question about the I don't know. If I were to ask my son, do you want to go to Michigan or Illinois? And he says, I don't know. And then I were to tell his mom, exercising all of my biases, saying he wants to go to Michigan. Right. And that would be an unfair and unreasonable and, in fact, a rational conclusion from what he said. Even if he said at some time during conversations or looking at schools, I like Michigan. I like Illinois. I like them both. Ultimately, what Bagherati says at each and every meeting is, I don't know, you tell me what to do. There is a degree of uncertainty, especially when coupled with the ultimate plan on October 2nd. After four months of meeting is this train pushing incident where Bagherati says at the same time, not that he goes there. Right. And I take your honor's point that it's about a method, but contrast it to the methods that he rejected. The methods that he rejected include specifically using a gun. And you look at the other murder for hire cases that this court has considered. Mandel, Kaguana, those cases all involve guns, a method of killing that leaves no doubt. And in this particular case, Bagherati is all over the place. He's looking for the agent for guidance, which expresses that he does. He's asking the agent, you tell me what to do. Hold on. So is your is your argument, Mr. Herman, that the government has proved beyond a reasonable doubt that the defendant intended to badly hurt Mr. Ganassetti, but they did not prove beyond a reasonable doubt that he wanted he wanted to murder Mr. That was the defense at trial, your honor, that that the point you're making here that these are subject. I think anybody anybody in the room that read these transcripts would say these are two people that are talking either about. Really, really badly hurting somebody or killing somebody in your honor, the defense of trial again was that the discussions showed an intent to cause bodily injury to harm, but not to kill and ultimately to make that gap that jump. Right. So we know the jury we know the jury convicted. Right. And the convictions being challenged on appeal. So the point I'm trying to make to discern from the argument you're advancing in the in the room here today is, are you saying there's there's one and only one way to view this evidence? It is it is beyond the pale to view the evidence as involving discussion of a murder. But it is absolutely fair to view the evidence as a discussion about about one person hiring another to badly hurt a third party. That would be that that latter point that would be a reasonable inference to draw from the conversation to would be an unreasonable inference in light of him saying, I don't know, and of what he wants to do when it's a decision between hurt or killed. And when he specifically says when asked what he wants to do, promotes the idea of a coma mentioned beating him beating him up in other situations that he is expressing something short of murder. And that's where his intent lies. And in light of the inherent contradictions of what he wanted to do with respect to murder, we would submit that that would jump the rail for an unreasonable inference. I'd like to switch to the 404B issue unless there's there's points on the sufficiency because this is where I think that the arguments with 404B interlock with the sufficiency arguments because you can see from the government's arguments on appeal. So, already statements at the first meeting about researching how to use insulin to kill his wife in her sleep played a crucial role in the testimony of trial. And even though the government in its brief says it didn't talk about any kind of plans in the closing argument. I believe it's at page 1325. The prosecutor specifically said that after talking about how Baghereti had thought about and talked about killing his wife says that he specifically he is obviously talking about these plans with his father. So, the fact that Baghereti is also talking about killing his wife, which is not charged, but it is a wrong. I don't think that there can be any debate about that, that him articulating something that he had quote unquote research about how to kill his wife would qualify as a 404B wrong. And the government in our post-trial pleadings and in Judge Wood's ruling treats it as a 404B wrong means that there was a particular type of analysis that had to be done, which is completely was not done here. And in 2014, Chief Judge Sykes, you authored Gomez, and it's been since at least 2014 when there was a couple of companion cases where this court has provided district courts with a clear roadmap of how to do 404B arguments. And what the district court did both pretrial at page seven and eight and then in its rule 29 pleading – sorry, order I think at pages 21 and 22 is completely ignore that roadmap. Isn't that harmless error though? No, it's not harmless error for two reasons. One, we would submit that the harmless error analysis should subtract the evidence of the testimony of the agent talking about Baghereti's plans to kill his wife. That's the necessary component of affecting substantial rights as you look at the evidence without the improperly introduced evidence. Well, I'm not talking about the commission of it. I'm not talking about the verdict. I'm talking about was it a harmless error as to the judge applying the free Gomez indestructibly intertwined standard. No, it wasn't, because if there's not clarification that you need to consider the non-propensity evidence or non-propensity reason for the 404B evidence, any district courts can simply say it goes to motive and intent without looking about whether or not that particular evidence is still in and of itself propensity. Can't they be both? I mean a lot of evidence that goes to motive and intent is propensity evidence, I would submit, probably all of it. Right, but for this – that's also where 403 needs to serve as a bulwark here, and there's absolutely no analysis of 403 here. So as an example, I forget – I think it might have been the Schmidt case from 2014 or another case. When you look at an example of the 404B, it's somebody who is – has drugs in a house and a possession of a gun, and then you introduce the drugs in the house to show that he's having the gun in furtherance of protecting the drugs. Mr. Herman, wouldn't we do the 403 analysis? I mean, couldn't we do the 403 analysis? The alternative is what, to send this back for a new trial? It is, Judge, because that evidence of the testimony regarding – But I'm trying to figure out the chain of reasoning here. If we said, all right, under your articulation of the harmless error standard, we subtract the evidence from the calculus, from what the jury considered, then we conduct our own harmless error analysis. Is that what you're suggesting, determine whether there's enough evidence to convict? My proposal would be to obviously reverse for a new trial because the jury needs to hear this case without it being polluted and infected with what was clearly propensity evidence. This was evidence that he intended to kill somebody else, another family member, which is – and he's charged with the murder-for-hire of yet another family member. It is just a bullseye example of showing that he has a likelihood to kill other people, family members. And the trial centered around that in many ways through closing arguments, through opening arguments, through the agent saying he wanted to kill his wife over and over again, and he had plans. If there's no other questions on that point, I'll reserve the rest of my time. Thank you. Morgan. Good morning, Your Honor, and may it please the court. My name is Alex Morgan, and I represent the United States. I'd like to start with the 404B issue. The district court here was well within its discretion in admitting the defendant's statements about wanting to kill his wife. The defendant's statements about wanting to kill his wife were evidence of defendant's intent, his motive. Ms. Morgan, do you agree that the district judge applied the wrong pre-Gomez standard in determining the admissibility of the evidence? I don't, Your Honor. I think what, if you read that opinion, I think what the district court is saying, and maybe it's less put a little inartfully, but I think what the district court was saying, what the district court was consistent in throughout its dealing with this issue, is that it didn't view this evidence as other acts. It viewed this as direct evidence of the charged crime, as motive and intent that go into the direct evidence of the charged crime. And so even in that ruling where that citation occurs, which I agree is no longer good post-Gomez, the principle from that case that direct evidence falls outside of the 404B analysis, that's still good post-Gomez. And I think that is what the district court was saying. The reason she gave for that is inextricably intertwined. Gomez. Understood. And I think that that citation and the parenthetical may be erroneous. It doesn't seem to me to be direct evidence either. I'm having a hard time figuring out how it's direct evidence. I think the government's theory is defendant is divorcing his wife. Wife's uncle is paying the legal fees to support the wife's divorce. And if the uncle was vanished or hit by a train, I suppose, then there would be nobody to pay the fees for the wife for the divorce. There's nothing to do with the death of the wife.  I mean, I'm with you on the motive and intent stuff. Right. And I admit that it's sort of, it's a little bit of a close call on whether it's direct evidence or whether it's 404B evidence. And I don't think it ultimately matters because both motive and intent are permissible purposes under 404B. And the district court, ultimately, though it thought that it was direct evidence, did the 404B analysis as well discuss the evidence in terms of the motive and intent? Did the 403 balancing analysis that is required under Gomez and then additionally limited the way in which the government could use the evidence at trial. And so the way that the government is arguing this evidence, the way that the jury heard about this evidence is in terms of his motive and his intent. The defendant's intent was the key disputed issue here at trial. And the statements about his wife demonstrated his genuine intent to kill the uncle. The defendant's statements about killing his wife showed that he was serious about killing the wife's uncle as opposed to just harming the wife's uncle, which is the theory of the case that defendant presented. Ms. Morgan, the difficulty that I have with it is I don't understand why the government was so intent on proving that he wanted to kill his wife. The indictment charged him with wanting to kill the uncle. And it seems to me the government would have had plenty to say, why does he want to kill the uncle? Because the uncle is encouraging a divorce and the divorce is choppy and messy as they always are or often are. And that's why he wanted to kill the uncle. Why did why does the government have to get anywhere near this additional intent to want to kill the wife? That's not what the indictment is about. I agree that the government didn't need that evidence necessarily, but I think that given that intent was a disputed issue here. The defendant's intent, his desire, not necessarily any plan to kill the wife, but his desire to do so tells us something about the divorce. It tells us something about his state of mind. And it tells us something about what he was willing to do in order to accomplish his ultimate goal. His ultimate goal was to permanently end his wife's ability to litigate the divorce proceedings and to cause him troubles with the custody of his children. So it wasn't that so that the fact that that was his ultimate goal, I think, is really informed by his desire and what he's saying about killing his wife. Both sides are sort of ignoring the elephant in the room, which is the entrapment defense and the elements of the entrapment defense are predisposition. Yes. And lack of government inducement or government inducement, I should say. So the government has to prove predisposition and a lack of government inducement once entrapment is put into evidence, as it was here. And so the sufficiency argument, the 404B permissible purposes for the other acts evidence here, the desire to kill his wife, etc. That all has to be filtered through the nature of the case, which is it's an entrapment case. And the way this was initiated is that the defendant talked to an acquaintance about killing his wife, potentially the uncle, the acquaintance goes to the ATF. The ATF sets up an operation sting something here and sends an agent out to pose as a hitman, a biker hitman. And so that's the context in which both the 404B evidence and the sufficiency of the evidence argument that are being raised on appeal needs to be evaluated, including any harmless error if the wrong legal standard was used by the district court in admitting the evidence about the wife. Understood, Your Honor, and I think that a rational jury could easily have found here that there was sufficient evidence to show. Let's start with the 404B because then understood. There was no limiting instruction on the proper purposes of this evidence, which was a pretty glaring omission as well. Although there's no instructional error being advanced because apparently there was no request for limiting instruction. That's correct. There wasn't a request for limiting instruction. And I will note on the entrapment part, this wasn't an argument that the government made below. But in terms of how the government argued predisposition at closing, the government pointed to the statements about the wife and said, look, he's predisposed to do this. If this were to go back, I think that would be an argument that could be advanced as well, is that not only does it those statements come in for motive and intent. They also come in for predisposition. And as the jury was instructed, predisposition looks at a person's character and kind of opens up this whole this whole can of worms in that respect. So this this evidence was certainly appropriate evidence of predisposition once the defendant put that entrapment defense at issue. And I think the evidence of predisposition goes beyond just the statements about the wife. The defendant came to that very first meeting knowing exactly what he wanted to do. He had this problem of his very bitter divorce and he had thought about a solution. He wanted to get rid of the uncle. He came to the meeting with, you know, prepared to discuss sort of the best way to get this done. And as defense counsel points out, there was some debate there talking about how is the best way to do this. But ultimately, he had his mind made up at that even at that very first meeting. And I'd like to point to the fact, too, that the defendant had already discussed this with his father, who was a police officer in India to sort of discuss how to get away with this type of crime. And I think all that just goes to show that the defendant was ready and willing to commit the murder for higher offense. If you're if you're on a sort of any questions on entrapment, I'd like to just briefly touch on the sufficiency as to the intent. I think a lot of these issues are overlapping. And so we've kind of touched on a lot of what goes into the defendant's intent. But I think as to every count, the evidence was more than sufficient to show that defendant had the requisite intent here that a murder for hire be committed. He came with he came to that meeting knowing what he wanted done. He used words like taken care of, but confirmed ultimately through his conversations with the undercover agent what he was looking to get done, including agreeing to plan to push the victim in front of a train. And the defendant throughout these meetings continue to make that intent clear, including giving the undercover agent thousands of dollars, his his wife uncle's picture and address and information so that he could carry out the crime. If there are no further questions, the government requests that this court affirm the defendant's convictions and sentence. Thank you. Mr. Herman, I think you had used almost all your time, but you can have an extra couple of minutes to. Thank you, Judge. So I'd like to address the point about the entrapment defense and predisposition. We acknowledge there's a fine line and sometimes even overlap between predisposition and propensity. What we how we address this in our in our reply brief was, at least in this circuit in the McGill case, the there's a tightened comparison between the charge defense and what you are making for an entrapment argument. So your your character is just not some some free floating every bad thing you've you've you've ever said could be relevant to whether or not you were predisposed to doing something else that was bad. So we'd we'd we'd rest on the arguments that that really focus on McGill. And I think the government cited a case, an older case looking at based on Ninth Circuit jury instructions talking about similar enough offenses. Just got to raise an important point about the that I want to I want to draw a line under regarding the relevancy of the separate apart from the entrapment issue about these comments at all. The, the, the, the judge it just records rule 29 order opens up by talking about how body was indicted by grand jury in connection with his efforts to hire a hitman to murder his wife's uncle in response to the uncle support of his wife during the contentious divorce. The relevancy of his intent and motive was the fact of a pending divorce proceeding, not any underlying animus and certainly not a plan and desire to kill his wife. So we would submit that even out of the gate, the 404 be analysis stumbles for absent any other questions. We, we appreciate the opportunity to present these arguments and would respectfully request that the convictions be vacated and it'd be resent to the district court. Thank you very much. Our thanks to all counsel will take the case under advisement. We're going to take another very brief recess to summon the attorneys in the next three cases and allow some additional students to come in.